## Commissioners of Sewerage of Louisville v. National Surety Company.

(Decided October 25, 1911.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Second Division).

Sewers—Bids for Construction—Steel Bars.—In response to an advertisement for bids for the construction of a sewer a bid was made which among other things proposed to furnish calumet plain steel bars for reinforcing concrete, the sum of 3 cents per pound. The bid was accepted and it was insisted that the bidder should execute a contract for other bars than calumet steel bars. The bidder declined to execute the contract. Held, that there was no acceptance of his bid, and there was no liability on his part in refusing to execute the contract.

JOHN MARSHALL, WM. W. CRAWFORD for appellant.

W. O. HARRIS, JR., RICHARD & HARRIS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Affirming.

The commissioners of sewerage of Louisville, a corporation created by statute, advertised for bids for Section D, northwest sewer, according to the plans and specifications governing the work on file in its office. The

specifications were contained in a printed pamphlet consisting of three parts: Pages 3-10 contained information for bidders; pages 11-20 contained a form of the proposal of the bidders; pages 21-100 contained the form of contract which the bidder was to execute if his bid was accepted. F. G. Mortimer, of Chicago, was the lowest bidder, his bid being $47,484. In his bid which was made on the form set out in the pamphlet, it was stated that he had carefully examined the proposed form of contract and the plans and agreed if his bid was accepted that he would contract with the Commission in the form of contract set out in the pamphlet. Accompanying his bid was a bond by which he bound himself to enter into a contract in accordance with the proposed form if his bid was accepted. His bid was accepted by the Commission, and he then declined to enter into a contract. Thereupon the Commission brought this suit against the National Surety Company which was his surety in the bond which accompanied his bid. The Surety Company answered pleading in effect that the Commission had not accepted Mortimer's bid as made. The case was heard before a jury on this issue and at the conclusion of the evidence the court instructed the jury peremptorily to find for the defendant. The action having been dismissed by the court, the plaintiff appeals.

Among other things a large quantity of steel was required by the contract. In the blank form of bid submitted to the bidders were these two items:

"Item 5A. For plain steel bars for reinforcing concrete in place as shown on the drawings or as directed by the engineer, the sum of ————— per pound.

"Item 5B. For ———— steel bars for reinforcing concrete in place as shown on drawings or as directed by the engineer, the sum of ————— per pound."

In making his bid Mortimer filled the blanks so as to make these items read as follows:

"Item 5A. For plain steel bars for reinforcing concrete in place as shown on the drawings or as directed by the engineer, the sum of .03 Calumet Steel bars per pound.

"Item 5B. For Johnson bars steel bars for reinforcing concrete in place as shown on drawings or as directed by the engineer, the sum of $.03 1-2 per pound."

Mortimer sent to the Commission some Calumet steel bars. They had them tested and informed him that

they could not be used. Among other things it was provided in the specifications as to steel bars as follows:

"The steel used shall be mild steel, having a tensile strength between the limits of 55,000 and 70,000 pounds per square inch, an elastic limit of not less than 50 per cent. of the tensile strength and an elongation of not less than 25 per cent. in 8 inches. In case cold twisted bars are accepted, these tests may be made on samples of the metal before deforming, and the ultimate tensile strength shall be between 40,000 and 58,000 pounds per square inch."

Mortimer then said that he would use the Johnson bars, but the Commission declined to agree to this, and insisted on his using plain steel bars which would fill the specifications. He insisted that he had bid on Calumet steel bars, and that he could not be required to use any other except the Johnson bars. The Commission insisted that he should use other plain steel bars, and this difference between them brought about the litigation before us.

The proof on the trial shows that Johnson bars are steel bars of a certain type and are made by a number of factories, the name indicating the type of bar and not the maker. On the other hand Calumet steel bars are made by the Calumet Steel Company, of Chicago. This bar was not known in Louisville, but was well known to the trade. It is a plain steel bar but is not made of mild steel as required by the specifications. It is made of a high tensile steel. It has not a tensile strength between 55,000 and 70,000 pounds per square inch; it will run from 85,000 to 95,000 pounds. It is very clear therefore that this bar did not fill the specifications. But Mortimer's bid was on Calumet steel bars. The only purpose for inserting these words in his bid was to confine his proposition to these bars. It is not material that the commission did not know what Calumet steel bars are. The bid was on Calumet steel bars, and when they were not willing to accept a contract calling for Calumet steel bars, they did not accept the bid as made by Mortimer. We, therefore, conclude that the circuit court properly instructed the jury peremptorily to find for the defendant.

Judgment affirmed.